# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Shannon F.,[1] | CIVIL NO. 3:23-CV-02096 |
| Plaintiff, | |
| v. | |
| | (Magistrate Judge Latella) |
| FRANK BISIGANO,[2] Commissioner of Social Security, | |
| Defendant. | |

## **MEMORANDUM OPINION**

This is an action brought under Section 1383(c) of the Social

Security Act and 42 U.S.C. § 405(g), seeking judicial review of the final

decision of the Commissioner of Social Security (hereinafter, "the

---

[1] To protect the privacy interests of plaintiffs in social security cases, we have adopted the recommendation of the Judicial Conference of the United States that federal courts should refer to plaintiffs in such cases by their first name and last initial. *See Tammy H. v. Frank Bisignano*, Commissioner of Social Security, No. 1:24-cv-00838, Docket No. 19 at n.1 (M.D. Pa. Aug. 27, 2025).

[2] Frank Bisignano became the Commissioner of Social Security on May 7, 2025. He has been automatically substituted in place of the original defendant, Martin O'Malley. *See* Fed. R. Civ. P. 25(d); *see also* 42 U.S.C. § 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security). The caption in this case is amended to reflect this change.

1

Commissioner") denying Plaintiff Shannon F.'s ("Ms. F.") claims for a period of disability and disability insurance benefits ("DIB") under Titles II and XVI of the Social Security Act.  (Doc. 1).  For the reasons expressed herein, and upon detailed consideration of the arguments raised by the parties in their respective briefs, the Commissioner's decision will be vacated and remanded.

## I.     Background and Procedural History

On April 16, 2021 Ms. F. filed an application for Disability Insurance Benefits under Title II benefits.  (Doc. 1 at ¶ 5)[3].  She filed an application for Title XVI supplemental security income on April 16, 2021.  (Doc. 1 at ¶ 5).  In both applications, she alleged an onset date of May 14, 2015.  (Doc. 1 at ¶ 5).  The Social Security Administration initially denied Ms. F.'s claims on September 7, 2016 and again on reconsideration on January 26, 2022.  (Doc. 9-2 at 19).  Ms. F. requested a hearing before an Administrative Law Judge ("ALJ") and on August 16, 2022, ALJ Randy Riley conducted the requested hearing.  (Doc. 9-2 at 19).  The ALJ continued the hearing so that Ms. F. could obtain

---

[3] For the sake of clarity, we refer, in all instances, to the ECF document numbers and pagination in the upper right-hand corner of each page.

representation, and on November 29, 2022 Ms. F. testified while represented by counsel.  (Doc. 9-2 at 19).

In a written opinion dated December 8, 2022, the ALJ determined that Ms. F. is not disabled and therefore not entitled to the benefits sought.  (Doc. 9-2 at 33).  Ms. F. appealed the ALJ's decision to the Appeals Council, which, on October 20, 2023, denied her request for review.  (Doc. 1 at ¶ 9).  On December 13, 2023, Ms. F. filed the instant action.  (Doc. 1).  The parties consented to have a magistrate judge conduct all proceedings in this matter on December 27, 2023.  (Doc. 7).[4] The Commissioner responded on February 5, 2024, filing an Answer (Doc. 8) and providing the requisite transcripts from the disability proceedings on February 5, 2024 (Docs. 8, 9).  The parties then filed their respective briefs (Docs. 14, 18, 21), with Ms. F. alleging four errors warranting reversal or remand.  (Doc. 14 at 1).

---

[4] On June 24, 2025 we issued an Order providing the parties with notice of our intent to continue to exercise the jurisdiction previously consented to by the parties absent any express objection.  (Doc. 22).  No such objections were filed.

## II.    The ALJ's Decision

In a decision dated December 8, 2022, the ALJ determined Ms. F.: "is not disabled under sections 216(i) and 223(d) of the Social Security Act" and "is not disabled under section 1614(a)(3)(A) of the Social Security Act." (Doc. 9-2 at 33).  The ALJ reached this conclusion after proceeding through the five-step sequential analysis required by the Social Security Act.  *See* 20 C.F.R. §§ 404.1520; 416.920.  The ALJ determined that Ms. F. met the insured status requirements of the Social Security Act through December 31, 2022.  (Doc. 9-2 at 21).

At step one, an ALJ must determine whether the claimant is engaging in substantial gainful activity ("SGA").  20 C.F.R §§ 404.1520(a)(4)(i); 416.920(a)(4)(i).  If a claimant is engaging in SGA, the Regulations deem them not disabled, regardless of age, education, or work experience.  20 C.F.R. § 404.1520(b); 416.902(b).  SGA is defined as work activity—requiring significant physical or mental activity— resulting in pay or profit.  20 C.F.R. §§ 404.1572; 416.972.  In making this determination, the ALJ must consider only the earnings of the claimant.  20 C.F.R. §§ 404.1574; 416.974.  The ALJ determined Ms. F. "has not engaged in [SGA] since January 29, 2020, the amended alleged

onset date." (Doc. 9-2 at 22).  Thus, the ALJ's analysis proceeded to step two.

At step two, the ALJ must determine whether the claimant has a medically determinable impairment that is severe or a combination of impairments that are severe. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii).  If the ALJ determines that a claimant does not have an "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities, [the ALJ] will find that [the claimant] does not have a severe impairment and [is], therefore, not disabled."  20 C.F.R. §§ 404.1520(c); 416.920(c).  If a claimant establishes a severe impairment or combination of impairments, the analysis continues to the third step.

The ALJ found Ms. F. has the following severe impairments: osteoarthritis of the left knee; obesity; benign paroxysmal positional vertigo; headaches; depression generalized anxiety disorder; and post-traumatic stress disorder.  (Doc. 9-2 at 22).

At step three, the ALJ must determine whether the severe impairment or combination of impairments meets or equals the medical equivalent of an impairment listed in 20 C.F.R. Part 404, Subpt. P, App.

5

1 (20 C.F.R. §§ 404.1520(d); 404.1525; 404.1526; 416.920(d)).  If the ALJ determines that the claimant's impairments meet these listings, then the claimant is considered disabled. 20 C.F.R. § 404.1520(a)(4)(iii); 416.920(a)(4)(iii).  The ALJ determined that none of Ms. F.'s impairments, considered individually or in combination, met or equaled a Listing.  (Doc. 9-2 at 22).  Specifically, the ALJ considered 1.17 (reconstructive surgery or surgical arthrodesis of a major weight-bearing joint), 1.18 (abnormality of a major joint(s) in any extremity), 14.09A (inflammatory arthritis with persistent deformity), 14.09B (inflammatory arthritis with inflammation or deformity in one or more major joints of an upper or lower extremity), 14.09D (inflammatory arthritis with repeated manifestations of inflammatory arthritis with at least two of the constitutional symptoms or signs), 14.09C (inflammatory arthritis with ankylosing spondylitis or other spondyloarthropathies), 11.02 (epilepsy), 2.07 (disturbance of labyrinthine-vestibular function), 12.04 (depressive, bipolar and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), and 12.15 (trauma- and stressor-related disorders).  (Doc. 9-2 at 22-23).

Between steps three and four, the ALJ determines the claimant's

residual functional capacity ("RFC"), crafted upon consideration of the

medical evidence provided.  The ALJ determined that Ms. F. has the

RFC:

> to perform light work as defined in 20 CFR
> 404.1567(b) and 416.967(b) and she can
> frequently climb ramps and stairs; occasionally
> balance, kneel, crouch, and crawl; and never
> climb ladders, ropes, or scaffolds.  She should
> avoid exposure to excessive noise defined as
> above SCO level three (moderate).  She should
> avoid exposure to flashing and bright lights and
> hazards such as heights and machinery.  She has
> the mental capacity for work in a low stress
> occupation defined as having only occasional
> decision making and only occasional changes in
> the work setting, frequent interaction with the
> public.

(Doc. 9-2 at 24-25).

Having assessed a claimant's RFC, at step four the ALJ must

determine whether the claimant has the RFC to perform the

requirements of their past relevant work. 20 C.F.R. §§

404.1520(a)(4)(iv); 416.920(a)(4)(iv).  A finding that the claimant can

still perform past relevant work requires a determination that the

claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv);

416.920(a)(4)(iv).  Past relevant work is defined as work the claimant

7

has done within the past five years, that was substantial gainful activity, and that lasted long enough for the claimant to learn how to do it. 20 C.F.R. §§ 404.1560(b); 416.960(b). If the claimant cannot perform past relevant work or has no past relevant work, then the analysis proceeds to the fifth step. The ALJ determined Ms. F. "has no past relevant work." (Doc. 9-2 at 31).

At step five of the sequential analysis process, an ALJ considers the claimant's age, education, and work experience to see if a claimant can make the adjustment to other work. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If a claimant has the ability to make an adjustment to other work, they will not be considered disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v).

The ALJ determined that Ms. F. was 29 on the alleged onset date, defined as a younger individual age 18-49 by the Regulations. 20 C.F.R. §§ 404.1563; 416.963. (Doc. 9-2 at 31). The ALJ also noted that Ms. F. "has at least a high school education" as considered in 20 C.F.R. §§ 404.1564; 416.964. (Doc. 9-2 at 31). The ALJ determined that upon consideration Ms. F.'s age, education, work experience, and RFC "there are jobs that exist in significant numbers in the national economy that

8

the claimant can perform." (Doc. 9-2 at 31).  The ALJ specifically identified occupations of router (DOT 222.587-038) and order caller (DOT 209.667-014).  (Doc. 9-2 at 32).

As a result of this analysis, the ALJ determined that Ms. F. was not disabled and denied her applications for benefits.  (Doc. 9-2 at 33).

## III.  Standard of Review

In order to receive benefits under Title II and Title XVI of the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in significant numbers in the national economy.  42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a).  Additionally, to be eligible to receive benefits under Title II of the Social

Security Act, a claimant must be insured for disability insurance benefits. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131.

In evaluating whether a claimant is disabled as defined in the Social Security Act, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a). Under this process, the Commissioner must determine, in sequence: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do past relevant work, considering his or her residual functional capacity ("RFC"); and (5) whether the claimant is able to do any other work that exists in significant numbers in the national economy, considering his or her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a).

The claimant bears the initial burden of demonstrating a medically determinable impairment that prevents him or her from doing past relevant work. 20 C.F.R. § 404.1512(a). Once the claimant has established at step four that he or she cannot do past relevant work, the burden then shifts to the Commissioner at step five to show

10

that jobs exist in significant numbers in the national economy that the claimant could perform that are consistent with his or her RFC, age, education, and past work experience. 20 C.F.R. § 404.1512(b)(3).

In reviewing the Commissioner's final decision denying a claimant's application for benefits, the Court's review is limited to determining whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. § 1383(c)(3) (incorporating 42 U.S.C. § 405(g) by reference); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). If the factual findings of the Commissioner are supported by substantial evidence and decided according to correct legal standards, a court will be bound by those findings. *Joshua L. v. Colvin*, No. 23-CV-4528, 2024 WL 5170747, at *7 (E.D. Pa. Dec. 19, 2024). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotations omitted). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402

11

U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, however, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). The question before the Court, therefore, is not whether Ms. F. is disabled, but whether the Commissioner's finding that Ms. F. is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence."); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim

12

requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012) ("[T]he court has plenary review of all legal issues decided by the Commissioner.").

## IV.   Discussion

On appeal, Ms. F. asserts three arguments in favor of remand. (Doc. 14 at 8-21). First, Ms. F. argues that substantial evidence does not support the ALJ's RFC assessment. (Doc. 14 at 8-12). Specifically, Ms. F. contends that the ALJ "reversibly erred by ignoring the one-to-two step tasks limitation" opined by M. Franks, Psy.D. ("Dr. Franks"), the State agency psychological consultant at the initial level.[5] (Doc. 14 at 10). Second, Ms. F. argues that substantial evidence does not support the ALJ's evaluation of Ms. F.'s obesity. (Doc. 14 at 12-16).

---

[5] Ms. F. also argues that the ALJ's RFC finding violated SSR 96-8P. (Doc. 14 at 8). She contends that "the ALJ did not set forth a logical resolution of [Ms. F.]'s headache symptoms on the RFC and he failed to explain whether her reported symptom-related functional limitations were consistent or inconsistent with the evidence." (Doc. 14 at 9). Ms. F. additionally asserts that "the ALJ failed to evaluate Ms. F.'s need to nap during the day." (Doc. 14 at 9). The Court declines to address these arguments because the Court finds the ALJ's RFC not supported by substantial evidence on other grounds.

Third, Ms. F. argues that "the ALJ's multiple errors with symptom evaluation compel reversal." (Doc. 14 at 16-21). In response, the Commissioner maintains that the ALJ: fully addressed Ms. F's limitations in the RFC; properly considered Ms. F's obesity; and did not err in evaluating Ms. F's subjective statements. (Doc. 18 at 26-40).

### A. The ALJ's RFC is Not Supported By Substantial Evidence.

Ms. F. argues that the ALJ's RFC finding was not supported by substantial evidence because the ALJ erred by "ignoring the one-to-two step tasks limitation from Dr. Franks." (Doc. 14 at 10-11).

In the State Agency's Initial Disability Determinations, Dr. Franks stated, based on her subjective and objective findings, that:

> [Ms. F.] can understand, retain, and apply information despite the limitations resulting from her impairment. She can concentrate and persist and maintain pace in order to complete the task. She can adopt and manage herself. [Ms. F.] has the mental capacity to manage, understand, and complete simple *one or two step tasks*.

(Doc. 9-3 at 42, 61) (emphasis added).

Because the "ALJ found the opinion of Dr. Franks to be persuasive and noted that Dr. Franks was a highly qualified expert who had the opportunity to review [Ms. F.]'s records[,]" Ms. F. argues that

14

the ALJ should have considered Dr. Franks' one-to-two steps tasks recommendation that impacted the potential jobs available to Ms. F. (Doc. 14 at 10-12).  If the ALJ were to have accepted Dr. Franks' limitation, Ms. F. would have been limited to work with first-level reasoning skills.  (Doc. 14 at 11).  The two jobs that the ALJ found that Ms. F. could work had a reasoning level of 2.  (Doc. 14 at 12).  If the ALJ were to have accepted Dr. Franks' recommendation, the ALJ would have found Ms. F. disabled.  (Doc. 14 at 12).

The Commissioner counters that "the ALJ was under no regulatory obligation to incorporate every limitation found in the prior administrative medical finding." (Doc. 18 at 33).  The Commissioner cites case law stating that an ALJ need not incorporate every limitation in a medical opinion that the ALJ finds persuasive.  (Doc. 18 at 34).

The ALJ is tasked with assessing a claimant's RFC. 20 C.F.R. § 404.1546(c); SSR 96-8p, 1996 WL 374184 (S.S.A. July 2, 1996).  "[RFC] is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 (3d Cir. 1999)).  An RFC reflects the *most* that an

individual can still do, despite his or her limitations, and is used at steps four and five of the ALJ's analysis. 20 C.F.R. §§ 404.1520, 404.1545; SSR 96-8P, 1996 WL 374184 at *2. In crafting the RFC, the ALJ must consider all the evidence of record, including medical signs and laboratory findings, daily activities, medical source statements, and a claimant's medical history. SSR 96-8p, 1996 WL 374184, at *5; *see also Mullin v. Apfel*, 79 F. Supp. 2d 544, 548 (E.D. Pa. 2000). An ALJ's RFC findings, however, must be supported by medical evidence. *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986). "[O]nce the ALJ has made this [RFC] determination, [a court's] review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence." *Black v. Berryhill*, No. 16-1768, 2018 WL 4189661 at *3 (M.D. Pa. Apr. 13, 2018).

Importantly, the Third Circuit instructs that the ALJ must not only state the evidence considered which supports the result but also indicate what evidence was rejected. *Cotter v. Harris*, 642 F.2d 700, 704, 706-707 (3d Cir. 1981). Because "an ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a

16

reviewing court can determine whether the reasons for rejection were improper." *Id.* The ALJ need not, however, undertake an exhaustive discussion of all the evidence. *See, e.g.*, *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). "There is no requirement that the ALJ discuss in her opinion every tidbit of evidence included in the record." *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004).

In making the RFC determination, "the ALJ must consider all evidence before him" and "evaluate every medical opinion ... receive[d]." *Burnett*, 220 F.3d at 121 (citations omitted); 20 C.F.R. § 404.1527(c); *see also Adorno v. Shahala*, 40 F.3d 43, 48 (3d Cir. 1994) ("The Secretary must 'explicitly' weigh all relevant, probative and available evidence . . . . The Secretary may properly accept some parts of the medical evidence and reject other parts, but she must consider all the evidence and give some reason for discounting the evidence she rejects."). The Social Security Regulations define "medical opinions" as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including ... symptoms, diagnosis, and prognosis, what [the claimant] can still do despite [his or her]

17

impairment(s), and ... physical or mental restrictions." 20 C.F.R. §

404.1527(a)(2). Social Security Ruling ("SSR") 96-5p further clarifies

that "opinions from any medical source on issues reserved to the

Commissioner must never be ignored." SSR 96-5p, 1996 WL 374183, at

*3, *6 (July 2, 1996).

As this matter involves a claim filed after March 27, 2017, the new

regulatory framework governing the evaluation of medical opinions

applies to the ALJ's evaluation of the medical opinions in the record.

*See* Revisions to Rules Regarding the Evaluation of Medical Evidence,

82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed.

Reg. 15,132-01 (Mar. 27, 2017)); *see also* 82 Fed. Reg. 15263 (March 27,

2017); 82 Fed. Reg. 16869 (corrective notice) (explaining that SSR 96-2p

and 96-5p do not apply to newly filed or pending claims after March 27,

2017). Under the new regulations, rather than assigning weight to

medical opinions, the Commissioner articulates "how persuasive" he or

she finds the medical opinions. 20 C.F.R. § 404,1520c(b). The

Commissioner's consideration of medical opinions is guided by the

following factors: supportability; consistency; relationship with the

claimant (including the length of the treatment relationship, the

18

frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and the examining relationship); specialization of the medical source; and any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1520c(c). The most important of these factors is the "supportability" of the opinion and the "consistency" of the opinion. 20 C.F.R. § 404.1520c(b)(2).

The ALJ must explain how he or she considered the "supportability" and "consistency" of a medical source's opinion. 20 C.F.R. § 404.1520c(b)(2). Generally, the ALJ may—but is not required to—explain his or her consideration of the other factors, but if there are two equally persuasive medical opinions about the same issue that are not the same, then the ALJ must explain how he or she considered the other factors. 20 C.F.R. § 404.1520c(b)(3). To facilitate judicial review, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests" and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Cotter*, 642 F.2d at 704, 706-707. An ALJ need not undertake an exhaustive discussion of all the evidence

19

or "use particular language or adhere to a particular format in conducting his analysis." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004); *see Hur*, 94 F. App'x at 133 ("There is no requirement that the ALJ discuss in his opinion every tidbit of evidence included in the record."). However, an ALJ must ensure "sufficient development of the record and explanation of findings to permit meaningful review." *Jones*, 364 F.3d at 505; *see, e.g.*, *Rivera v. Comm'r of Soc. Sec.*, 164 F. App'x 260, 262 (3d Cir. 2006) ("The only requirement is that reading the ALJ's decision as a whole, there must be sufficient development of the record and explanation of findings.").

Ms. F.'s claim that the ALJ erred by ignoring Dr. Franks' one-to-two step tasks limitation is persuasive. The facts of this case are analogous to the line of cases in this District that hold where an ALJ finds a medical opinion persuasive, he or she must explain a decision not to include a one-to-two step task limitation included in such opinion in the RFC. *See Shipman v. Kizaki*, No. 3:22-cv-00636, 2023 WL 5599607, at *8 (M.D. Aug. 29, 2023) (Mehalchick, J.); *Pokorny v. Kijazi*, No. 1:21-cv-00790, 2023 WL 6988360, at *6 (M.D. Pa. Oct. 23, 2023) (Schwab, M.J.); *Simon v. Kijakazi*, No. 1:20-cv-02064, 2022 WL 828935,

20

at *9 (M.D. Pa. Mar. 18, 2022) (Carlson, M.J.); *Podunajec v. Saul*, No.

3:19-cv-01938, 2020 WL 7319779, at *6-7 (M.D. Pa. Dec. 11, 2020)

(Saporito, J.).

The Court in *Simon* explained that the failure to further address

or explain the decision to omit the one-to-two step task limitation from

an opinion an ALJ finds persuasive constituted an error, noting:

> This limitation was a material aspect of the
> doctor's opinion and its unexplained absence from
> the RFC leaves an evidentiary void in this case.
> While the ALJ certainly was not required to
> include this limitation, the ALJ was required to
> explain the failure to include this limitation,
> particularly because the ALJ found this opinion
> to be generally persuasive and supported by the
> record.

2022 WL 828935, at *10; *see also Shipman*, 2023 WL 5599607, at *9

("[w]hile the ALJ certainly was not required to include a limitation to

one-and two-step tasks, the ALJ was required to explain the failure to

include this limitation, particularly because the ALJ found this opinion

to be generally persuasive and supported by the record.").

Here, the ALJ considered the record and formulated the following

RFC:

> to perform light work as defined in 20 CFR
> 404.1567(b) and 416.967(b) and she can

21

frequently climb ramps and stairs; occasionally balance, kneel, crouch, and crawl; and never climb ladders, ropes, or scaffolds. She should avoid exposure to excessive noise defined as above SCO level three (moderate). She should avoid exposure to flashing and bright lights and hazards such as heights and machinery. She has the mental capacity for work in a low stress occupation defined as having only occasional decision making and only occasional changes in the work setting, frequent interaction with the public.

(Doc. 9-2 at 24-25).

In discussing Dr. Franks' opinion, the ALJ stated:

[i]nsofar as [statements from Dr. Franks and state agency psychological consultant John David Gavazzi, PsyD.] state the claimant has no limitations understanding, remembering, or applying information and adapting or managing herself; these statements are persuasive as they are supported by the longitudinal treatment notes, which generally show the claimant is fully oriented and cooperative with normal speech, normal motor activity, normal thought process, logical thought content, normal eye contact, intact recent memory, intact remote memory, normal attention span, normal concentration, average intellectual functioning, normal fund of knowledge, normal insight, and fair judgment . . . . These statements are also consistent with the claimant's lack of inpatient mental health treatment or referral to crisis intervention after 2020. Further, Dr. Franks and Dr. Gavazzi are highly qualified experts who had the opportunity to review the claimant's records.

(Doc. 9-2 at 29).

The ALJ questioned the vocational expert about available jobs for

Ms. F. in the national economy based upon her RFC.  (Doc. 9-2 at 63-

65).  Specifically, the ALJ stated:

> Assume a person of claimant's age, education and
> work experience who is able to do the following.
> Light work, frequent climbing or ramps, stairs,
> stoop.  Occasional balance, knee, crouch, crawl.
> Never climbing of ladders, ropes, scaffolds.  Avoid
> exposure to excessive noise as defined as SCO
> Level III Moderate.  Avoid exposure to flashing
> and bright lights, hazards such as heights and
> machinery, work in a low-stress occupation
> defined as having only occasional decision-
> making and only occasional changes in the work
> setting, and can have frequent interaction with
> the public, up to frequent. . . .  Not constant, but
> up to frequent. . . . This individual cannot engage
> in the same work activity over a regular
> continuing basis for eight hours a day, five days a
> week for a 40-hour work week.

(Doc. 9-2 at 64-65).

Despite the ALJ finding Dr. Franks persuasive, the ALJ did not

incorporate the one-to-two step task limitation included in Dr. Franks'

opinion in Ms. F.'s RFC or the question posited to the vocational expert.

(Doc. 9-2 at 24-25, 64-65).  The ALJ was not required to incorporate this

limitation into his RFC or into the hypothetical posited to the vocational

expert, but he was required to address it and explain his determination that contrary to Dr. Franks' finding, Ms. F. had the ability to perform more than one-to-two step tasks.  *See Simon*, 2022 WL 828935, at \*10; *see also Shipman*, 2023 WL 5599607, at \*9.

The ALJ's omission of an explanation for discounting Dr. Franks' one-to-two step task limitation is not harmless error.  As explained in *Shipman*:

> In the *Dictionary of Occupational Titles* ("DOT"), the general educational development of each occupation is described. "General educational development embraces those aspect of education (formal and informal) which are required of the worker for satisfactory job performance. DOT, Appendix C, 1991 WL 688702. The GED scale is composed of three divisions, but only one is relevant here— reasoning development. DOT, Appendix C, 1991 WL 688702. In occupations with a reasoning development level of 1, satisfactory job performance requires that an employee be able to "[a]pply commonsense understanding to carry out simple one-or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job." DOT, Appendix C, 1991 WL 688702. In occupations with a reasoning development level of 2, satisfactory job performance requires that an employee be able to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few

24

> concrete variables in or from standardized
> situations." DOT, Appendix C, 1991 WL 688702.

2023 WL 5599607, at *9.

"The plain language of the DOT definition for GED Reasoning Development Level 1 suggests there is no conflict between it and a limitation to no more than one-to-two step tasks." *Id.* at *10. Accordingly, courts have found that a limitation to one-to two-step tasks is consistent with GED Reasoning Development Level 1, but *inconsistent* with GED Reasoning Development Level 2. *Id.* at *10 (quoting *Ferrebee v. Kijakazi* No. 3:20-CV-02188, 2022 WL 905153, at *4 (M.D. Pa. Mar. 28, 2022) (collecting cases). Because GED Reasoning Level of 2 may conflict with a limitation of one-to-two step tasks, courts typically remand where there is a conflict involving a limitation to one-to-two step tasks and the only occupations cited by a vocational expert and ALJ contain a GED Reasoning Development Level 2. *Id.* (error was not harmless and required remand where occupations listed by vocational expert and adopted by ALJ had GED Reasoning Development Levels of 2 or greater).

On the other hand, in cases where an ALJ failed to explain a decision not to incorporate a one-to-two step task limitation, but the

25

vocational expert identified at least one job with a GED Reasoning Development Level of 1, the error has been deemed harmless with no need for remand. *See, e.g., Soto v. Kijakazi*, No. 4:21-CV-1531, 2022 WL 4358087, at *11 (M.D. Pa. Sept. 20, 2022) (error was harmless and no remand required where claimant with one-to-two step task limitation would still be able to perform one of jobs identified by vocational expert with GED Reasoning Development Level of 1).

Here, the vocational expert indicated that Ms. F. could perform the jobs of router and order caller, which have GED Reasoning Development Levels of 2. (Doc. 9-2 at 32).[6]  Because there are no positions identified by the vocational expert with a GED Reasoning Development Level of 1, the ALJ's failure to explain his decision not to incorporate the one-to-two step task limitation is not harmless error. Therefore, the ALJ's decision was not supported by substantial evidence and remand is required to properly consider Dr. Franks' identified one-to-two step task limitation.

---

[6] *See* DICTIONARY OF OCCUPATIONAL TITLES, Router (DOT 222.587-038), 1991 WL 672123; Order Caller (DOT 209.667-014), 1991 WL 671807.

## V.    Conclusion

Based on the foregoing and pursuant to sentence four of 42 U.S.C. § 405(g) the Commissioner's decision to deny Ms. F. disability benefits will be **VACATED** and **REMANDED** to the Commissioner to fully develop the record, conduct a new administrative hearing, and appropriately evaluate the evidence. The Clerk of Court will be directed to **CLOSE** this case.

An appropriate Order follows.

Dated: July 29, 2026                      **/s/ Leo A. Latella**
                                          Leo A. Latella
                                          United States Magistrate Judge

27